IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Crim. No. RDB-24-158 |
| MARK RICE, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MARK RICE'S SENTENCING MEMORANDUM**

**Introduction**

Mark Rice will appear before this Court for sentencing on June 23, 2025, ready to accept this Court's sentence for a very serious offense for which he accepts full responsibility.[1] As demonstrated by the c-plea range (27-32 years), Mr. Rice understands and appreciates the egregious harm he has caused. Mr. Rice has no excuses for his conduct. At the same time, defense counsel asks the Court to consider his conduct within the context of his life, including that his life has been plagued by unrelenting abuse, neglect, and trauma from a very young age. It is these factors specifically that the Defense believes warrant a downward variance and, in particular, a sentence of 27 years' (324 months') imprisonment plus a lengthy period of supervised release with strict conditions.

Since his arrest on April 28, 2023, Mr. Rice has begun working to understand how he got here. His path to this sentencing is, in part, the product of ███████████████████

███████████████████████████████████████████

---

[1] Counsel appreciates Probation's and the Court's willingness to prepare for sentencing in a timeframe that accommodates the departure of Special Assistant United States Attorney Jacob Gordin.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████

And while not sexual in nature, Mr. Rice's path here was also guided by his own severe alcoholism and work-related trauma. ████████████████████████████████████ ███████████████████████████████████, and his drinking habits developed throughout his childhood and into adulthood to the point where he would drink 30 plus beers per day. His path was also shaped by significant trauma he suffered while working to protect his community. As a firefighter and Emergency Medical Technician (EMT), Mr. Rice recalls hosing off his first charred body in the rubble of a fire at 14 years old when he began volunteering at the firehouse. And in an incident that haunts him to this day, he vividly remembers performing mouth-to-mouth resuscitation on a three-month-old baby who later died.

To be sure, none of this excuses why ████████████████████████████████████, or why he possessed and distributed child pornography. But it does provide important context for the Court. So, too, does the fact that, as soon as law enforcement authorities confronted him with a Cybertip, he confessed to his crimes and expressed a desire for help. Over the nearly 26 months since that day, Mr. Rice has begun to process how the abuse, neglect, and trauma of his past have shaped where he is—specifically, how ████████████████████████████████ have been used to numb the untreated pain of his past.

2

Notwithstanding that pain, and the gravity of the conduct that stemmed from it, there is hope for Mr. Rice. He will spend the next few decades in prison. But the mental clarity and focus the past 26 months have brought have motivated Mr. Rice, for the first time in his life, to confront the demons of his past with as much treatment as he can possibly get in the Bureau of Prisons (BOP). That treatment, including hopefully in the BOP's Residential Sex Offender Treatment Program, combined with the trade skills he has developed through his prior employment, and restrictive proposed conditions of supervised release that will exist likely for the rest of his life, will set him up for success upon his release many years from now. He hopes to emerge from prison with better coping skills, on a lengthy period of supervision, and ready to live a quiet life keeping to himself.

Because he recognizes how serious this case is, Mr. Rice has agreed to a c-plea to a range of 27-32 years' imprisonment. His social history, which highlights his need for mental health, substance abuse, and sex offender treatment; his promising work history in skilled trades, including in jobs that serve the community; along with an analysis of the other factors under 18 U.S.C. § 3553(a), all weigh heavily in favor of a sentence of 27 years and a lengthy period of supervision with strict conditions.

I.      **Procedural History**

Mr. Rice was arrested on April 28, 2023, at his home in Elkton, Maryland. ECF No. 29 (Plea Agreement) at 14. On the same day, he was indicted in the District Court of Maryland for Cecil County on charges including sexual abuse of a minor, possession of child pornography, and distribution of child pornography. Mr. Rice was indicted federally on May 15, 2024, and he was charged with three counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a)(1), three counts of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and one

3

count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). ECF No. 1. On June 4, 2024, the state case was nolle prossed in favor of the federal prosecution. Mr. Rice had an initial appearance in this Court on June 6, 2024. ECF No. 4. On June 7, 2024, Mr. Rice had a detention hearing and arraignment before the Honorable J. Mark Coulson. ECF Nos. 10-11. On the same day, Judge Coulson entered an order of detention. ECF No. 12.

On June 3, 2025, Mr. Rice pled guilty to Count 1 (sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a)(1)), Count 4 (distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)), and Count 7 (possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B)). ECF No. 29. Mr. Rice's plea was tendered pursuant to an agreement under Rule 11(c)(1)(C), which requests a sentence of between 27-32 years of imprisonment. *Id.*

On June 3, 2025, an expedited sentencing was scheduled for June 23, 2025 at 2:30 p.m.

II. **Sentencing Guidelines**

The parties have stipulated that the final adjusted offense level is 43. ECF No. 29 at 8, ¶ 10. The conduct described in the factual stipulation sets forth four groups under Chapter 3 of the U.S. Sentencing Guidelines (U.S.S.G.). *Id.* at 6-7, ¶ 7. Groups 1 and 2 relate to the sexual exploitation of Minor Victim 1, both of which result in an offense level of 40. *Id.* at 6, ¶ 7(b)-(e). Group 3 relates to the sexual exploitation of Minor Victim 2, which also results in an offense level of 40.[2]

---

[2] The Presentence Report (PSR) calculates the offense level for Group 3 as 42 based on the addition of a two-level enhancement under U.S.S.G. § 2G2.1(b)(2)(A) for conduct involving a "sexual act" or "sexual conduct." ECF No. 33 (PSR), at ¶ 49. That enhancement is not applicable here. First, U.S.S.G. § 2G2.1(b)(2)(A) provides for a two-level enhancement for "the commission of a sexual act or *sexual contact*," not sexual "*conduct*" as the PSR states. Second, Application Note 2 to § 2G2.1(b)(2)(A) provides that "sexual act" and "sexual contact" have the meaning of those terms set forth in 18 U.S.C. §§ 2246(2) and (3) respectively. U.S.S.G. § 2G2.1 Application Note 2. As defined by statute, a "sexual act" and "sexual contact" each require some form of sexual contact, penetration, or touching. 18 U.S.C. §§ 2246(2)-(3). The conduct at issue in Group 3, however, did not involve any sexual contact, penetration, or touching. ████████████████████████

4

*Id.* at 6, ¶ 7(f)-(i). And Group 4 covers the distribution and possession of child pornography, which results in an offense level of 41. *Id.* at 6-7, ¶ 7(j)-(o).

Under U.S.S.G. § 3D1.4, four levels are added because there are four groups, three of which (Groups 1, 2, and 3) are between one and four levels less serious than the most serious group (Group 4). *Id.* at 7, ¶ 7(p). Therefore, four levels are added to Group 4's offense level, which results in an offense level of 45. *Id.*

After adjusting for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b), the offense level is reduced to 42. *Id.* at 7, ¶ 8. However, there is a five-level upward adjustment under U.S.S.G. § 4B1.5(b)(1) because the offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. *Id.* at 8, ¶ 9. With that five-level enhancement, the offense level would be 47. But under Chapter 5, Part A of the U.S.S.G., an offense level of more than 43 is to be treated as an offense level of 43.

Mr. Rice has not been assigned any criminal history points, which places him in criminal history category I. ECF No. 33, at ¶¶ 76-78.

A final adjusted offense level of 43 and a criminal history category of I yields a guidelines range of life.

While the applicable guidelines range is life, Count 1 carries a mandatory minimum of 15 years and a statutory maximum of 30 years. *Id.* ¶ 124. Count 4 requires a mandatory minimum of five years and carries a maximum of 20 years. *Id.* And Count 7 has no mandatory minimum and a maximum of 10 years. *Id.*

---

[redacted] The defense informed Probation that it believed this enhancement was included in error. Probation notified counsel to inform the Court of the requested change.

5

**III.	A 27-Year Sentence Is Sufficient But Not Greater Than Necessary to Accomplish the Goals of Sentencing as Set Forth in 18 U.S.C. § 3553(a).**

If the Court accepts the parties' joint recommendation under Rule 11(c)(1)(C), Mr. Rice will spend approximately three decades in prison no matter where this Court's sentence falls within the agreed-upon range. Not only does a 27-year sentence appropriately match the seriousness of the offense, but it is also justified by all of the § 3553(a) factors, including in particular Mr. Rice's history and characteristics. He is a first-time offender, who, from the first moments after he was confronted by police officers, took responsibility for his egregious conduct, and acknowledged his need for help and treatment. Mr. Rice's untreated mental health and substance abuse issues—which come from a traumatic upbringing plagued by ███████████████—can be managed with appropriate treatment, and his trade skills, work ethic, and demonstrated commitment to helping others and serving the community provide strong reasons to believe he will never reoffend.

    **A.	Mr. Rice's History and Characteristics: A Childhood of ███████████████, Set the Stage for Maladaptive Coping Mechanisms, ███████████████.**

The mitigation report prepared by Mairead Burke, LCSW-C, provides an in-depth account of Mr. Rice's life up until the time of his arrest in April 2023. Ms. Burke's report is attached as Exhibit A (filed under seal). As Ms. Burke summarizes:



. . .



Exhibit A at 1-2. Below, counsel provides a summary of Ms. Burke's report, but asks the Court to consider the entirety of the report.

Mr. Rice was born on July 13, 1984, into a family of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████
     ██████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
█████████████████████████
     ██████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████ *Id.* As a teenager volunteering at the Woodlyn Volunteer Fire Company Firehouse, and then during EMT training courses he took while still in high school, Mr. Rice routinely responded to horrific accidents and deaths. *Id.* These experiences would be hard for anyone to process under any circumstances, let alone a teenager ████████████████.[3]

To avoid processing these traumas, Mr. Rice turned to maladaptive coping mechanisms—especially as his work as an EMT regularly exposed him to dead bodies and other traumatic experiences (*e.g.*, discovering a charred corpse from a motorcycle accident at 14). As Ms. Burke's

---

[3] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

report explains in greater detail, at 14 years old, Mr. Rice taught himself to dissociate by disconnecting himself from his thoughts, feelings, memories and interactions, and by going into an "autopilot" state. Ex. A at 4-5. He describes this state as like "watching a movie" of his life. *Id.* at 7. It was as though he "wasn't operating." *Id.* Eventually, this "became his primary way of functioning, allowing him to perform highly stressful emergency response work while remaining emotionally detached." *Id.* at 5. In addition to living in a perpetual state of dissociation, ▮

▮

▮

▮ *Id.*

Eventually, Mr. Rice's traumas caught up to him. He found himself depressed, isolated, and unable to escape the racing and intrusive thoughts that came with regular exposure to traumatic experiences, and he had not engaged in any processing, debriefing, or management of those experiences whatsoever. Mr. Rice eventually cut back on his drinking (though he did not eliminate it), ▮

▮

▮ *Id.* at 6-7. Mr. Rice would collect scrap metal, work side jobs, or compulsively split firewood until the late hours of the night just to work himself to the point of utter exhaustion so that he could finally fall asleep. *Id.*

This is how Mr. Rice existed for years up until his arrest in this case. He was depressed, isolated, dissociated, and suffering from the perpetual symptoms of his lifelong abuse and neglect, and the unprocessed traumas of working as an EMT for more than two decades. As Ms. Burke's report concludes:

9



*Id.* at 8.

Beneath the layers of abuse, neglect, trauma, and destructive coping behavior, Mr. Rice is a fundamentally decent, honest, and extremely hard-working person. This is demonstrated, in particular, by his employment history in fields focused on helping others while putting his own life at risk (*i.e.*, installing fire sprinklers, deep sea salvage diving,[4] and volunteering as a firefighter and EMT). If nothing else, it took enormous strength, courage, and commitment for Mr. Rice to spend over 20 years as an EMT saving lives and helping others, even as the trauma he experienced doing it nearly destroyed his own life.

      **B.**      **The Nature and Circumstances of the Offense: Immediately with His Arrest, Mr. Rice Expressed a Desire to Receive Treatment and Accept Responsibility.**

There is no understating the seriousness of the conduct at issue in this case. Mr. Rice knows that. After the episodes of abuse, he was overcome by guilt and shame and would drive himself deeper into isolation, withdrawal, and dissociation. *Id.* at 7.

At the same time, from the first moments after being confronted by police officers, Mr. Rice confessed, cooperated with law enforcement, and took responsibility for his actions.

---

[4] Deep sea salvage diving includes diving operations of the like that were necessary after the Francis Scott Key Bridge collapse.

When officers confronted Mr. Rice, they did not have a warrant, and Mr. Rice was unrepresented. Nonetheless, he cooperated with their investigation. He scrolled through the saved images on his phone when they asked him to; he agreed to let them search his phone; and he waived his rights and agreed to be interviewed (and, later, to take a polygraph examination) in an effort to comply with their investigation. ECF No. 29 at 14-15.

Mr. Rice also acknowledged during those interviews that his conduct was unacceptable and illegal, and that he needed treatment. Mr. Rice told officers that he had tried in the past to seek out resources for help but was unsuccessful.

While the nature and circumstances of the offense conduct are of the most serious this Court sees, and Mr. Rice makes no excuses for his abhorrent conduct, Mr. Rice's conduct also demonstrates someone who wants treatment during and after his incarceration and to live the remainder of his life—most or all of which will be on strict supervision and monitoring—quietly and alone.[5]

       **C.**       **Mr. Rice's Need for Training and Treatment: Mr. Rice Desires Treatment, Which Will Begin in the BOP and Extend Long After, During Supervision, and, Given His Employment History, There Is Evidence to Believe He Will Be Successful.**

As Mr. Rice told law enforcement, he recognizes his need for sex offender and mental health treatment. But the social stigma, and devastating potential legal consequences, of seeking sex offender treatment in the community, often make doing so feel impossible. Mr. Rice appreciates that, in the BOP, he may finally have access to the treatment that he knows he needs. Therefore, he respectfully requests that this Court include in the Judgment a recommendation that

---

[5] Given Mr. Rice's age, whatever lengthy period of supervised release is imposed will likely result in effectively a lifetime term of supervision.

11

he be designated to any appropriate BOP facility that offers the Residential Sex Offender Treatment Program.

Whatever period of supervision that is imposed, Mr. Rice recognizes that it will be lengthy, particularly given his expected age at release, and result in effectively lifetime supervision. And Mr. Rice will need the support of Probation for successful reentry to the community given the nature of these convictions. Counsel anticipates that Mr. Rice will not have any objections to the significant special conditions that Probation recommends, which will provide ongoing support to him, including mental health, substance abuse, and sex offense-specific treatment. The proposed special conditions will continue to promote community safety after Mr. Rice's period of imprisonment is complete.[6]

Over the course of his life and career, Mr. Rice has built many specialized, and marketable, trade skills. As discussed above, Mr. Rice has been an EMT for over two decades. He is also a certified deep sea diver and worked from 2006-2008 doing dive salvage work. Most recently, Mr. Rice held a job between 2012 and his arrest in this case as a fire sprinkler installer. Nonetheless, in his continued hope for rehabilitation, Mr. Rice would like to take advantage of the BOP's job training programs. Specifically, he hopes to complete the BOP's welding program, and to obtain his commercial driver's license. The skills he has built over the course of his career—combined with any new ones he develops in the BOP—will allow Mr. Rice to obtain and sustain employment quickly upon his release from the BOP.

---

[6] Counsel will review the mandatory, standard, and proposed special conditions of supervised release with Mr. Rice in advance of the June 23 sentencing hearing.

**D.      No More Than 27 Years Is Necessary to Protect the Public: The Consequences of This Conviction, Including Supervision and Sex Offense Registration, Will Ensure When Mr. Rice Is Released, Which Will Happen No Sooner Than When He Is 62 Years Old, the Public Will Be Protected.**

A sentence of 27 years' imprisonment plus a lengthy period of supervised release with sex-offense specific conditions is reasonable to protect the public. After accounting for anticipated good time credits, and credit for time already served, if this Court imposes a 27-year sentence, Mr. Rice will be approximately 62 years old at the time of his release in 2046. According to a 2016 report by the United States Sentencing Commission, recidivism rates plummet to 16% when someone is older than 60 years old at the time of their release from the BOP, as compared to 67.6% for those released under the age of 21:



United States Sentencing Commission, *Recidivism Among Federal Offenders: A Comprehensive Overview*, at 23 (March 2016), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

Moreover, the Residential Sex Offender Treatment Program, which Mr. Rice asks this Court to recommend in the Judgment is a "high-intensity program" with an emphasis on cognitive behavioral therapy, all experienced within a therapeutic community. U.S. Dept of Justice, Federal Bureau of Prisons, "Program Statement: Sex Offender Programs" (Feb. 15, 2013), available at

13

https://www.bop.gov/policy/progstat/5324_010.pdf. This model, which is driven by evidence-based psychology, has been proven to be effective at reducing recidivism. *Id.* at 14. Sex offender treatment in general—including the cognitive behavioral approach—works to prevent recidivism. Roger Przybylski, U.S. Dept of Justice, Office of Justice Programs, Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking, "Chapter 7: Effectiveness of Treatment for Adult Sex Offenders" (July 2015), available at https://smart.ojp.gov/sites/g/files/xyckuh231/files/media/document/theeffectivenessoftreatmentforadultsexualoffenders.pdf. There is good reason to believe Mr. Rice can be safely released into the community after a 27-year sentence.

While it does not mitigate the harm he caused, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Rice will never again have similar access or proximity to young children, primarily because his supervised release conditions will preclude it and he will be subject to strict monitoring, including sex offense registration. No matter what his conditions require, though, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and he will almost certainly never again be in a situation where he is regularly interacting with ▮▮▮▮▮▮▮▮▮ a young child. Moreover, his age and ongoing requirement to register as a sex offender once released from incarceration ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮ The requested treatment and computer and other monitoring conditions will ensure that Mr. Rice is not in a position to reoffend as it relates to the distribution and possession offenses.

Moreover, the consequences of any federal conviction—but especially a sex offense—last far longer than any term of imprisonment imposed. Mr. Rice faces a lifetime of federal supervision. And he is guaranteed to have a lifetime of public shame and humiliation as a registered sex

14

offender. For Mr. Rice, there will be no escaping the consequences of his conduct in this case, no matter how many years of incarceration this Court decides is appropriate.

*    *    *    *

Mr. Rice has committed a very serious offense and he has no excuses. As a result of his conduct, he will spend approximately the next three decades in prison. Nonetheless, this Court should have hope for Mr. Rice and his future. With the treatment he has never had, Mr. Rice can work to process and reflect on ███████████████████████████████ ███████████████████ He can work to process the multiple decades-worth of traumatic experiences he witnessed as an EMT and volunteer firefighter, and the self-destructive ways he tried to avoid the emotional weight of those experiences. Most importantly, he can work to process and better understand what led him to commit the offenses for which he will be sentenced to ensure he never commits such offenses again. Indeed, given his conviction, ongoing monitoring requirements, and a lengthy supervision period, he will never again be in a position to commit such offenses.

It takes a very strong, committed, and resilient person to rush into a burning building to save the life of a stranger. Mr. Rice is resolved to approach this next phase of his life with that same fortitude and commitment. And many years from now, Mr. Rice will return from the BOP with a new set of skills (both treatment-based and career-based) that can ensure he remains a productive, law-abiding, member of the community. A 27-year sentence, combined with a lengthy period of supervision and the strict conditions of supervised release that will follow, is sufficient but not greater than necessary to turn that hope for Mr. Rice into reality.

### IV.     Guidelines Objections/Corrections

We ask the Court to make the following corrections to the PSR (ECF No. 33):

- Page 2, Release Status: Mr. Rice has been in custody on related state charges since April 28, 2023, not April 29, 2023.

- Paragraphs 49, 66, 67, 69, 70: We ask that these paragraphs be changed to reflect that Mr. Rice does not qualify for an enhancement under § 2G2.1(b)(2)(A) for Group 3 (relating to Count 3) involving the commission of a sexual act or sexual contact.

V.   **Conclusion**

For these reasons, this Court should sentence Mr. Rice as follows:

- Imprisonment:

  - A total sentence of 324 months' (27 years') imprisonment with credit for time served since June 6, 2024, to be reflected in the Judgment as 324 months' imprisonment on Count 1, a concurrent 240 months' imprisonment on Count 4 (distribution), and a concurrent 120 months' imprisonment on Count 7 (possession);

  - A recommendation that Mr. Rice receive credit for time served in state custody since April 28, 2023;

  - A recommendation that Mr. Rice receive mental health and substance abuse treatment in the BOP, in addition to vocational training in welding and commercial driving; and

  - A recommendation that Mr. Rice be designated to an appropriate BOP facility that offers the Residential Sex Offender Treatment Program.

- Supervision: A lengthy period of supervised release with the standard, mandatory, and special conditions of supervised release recommended by Probation, which counsel anticipates Mr. Rice having no objections to.

- Restitution: Counsel has not yet received any requests for restitution.

- Special Assessment: The imposition of a special assessment of $100 per count of conviction, for a total of $300. Given that Mr. Rice is indigent, counsel asks that no special assessment be ordered under the Justice for Victims of Trafficking Act (18 U.S.C. § 3014) or the Amy, Vicky, and Andy Child Pornography Victim Assistance Act (18 U.S.C. § 2259A).

- Fine: No fine because Mr. Rice does not have the ability to pay a fine.

16

Respectfully submitted,

JAMES WYDA
Federal Public Defender for the District
of Maryland

_____/s/_____
Jonathan Hettleman
Maggie Grace
Assistant Federal Public Defenders
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
(410) 962-3962 (phone)
(410) 962-0872 (fax)
jonathan_hettleman@fd.org
maggie_grace@fd.org

17